UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

AMERICAN TRUCKING AND TRANSPORTATION
INSURANCE CO., RRG, et al.

                  **MEMORANDUM OF
                  <u>DECISION AND ORDER</u>**

          Plaintiffs,

                  14-cv-5913 (LDH)(SIL)

      -against-

LIBERTY MUTUAL INSURANCE CO., et al.

          Defendants.

------------------------------------------------------------------x

LᴀSHANN DᴇARCY HALL, United States District Judge:

      Plaintiffs American Trucking and Transportation Insurance Company, RRG ("ATTIC")
and Watkins and Shepard Trucking, Inc. ("Watkins") and Defendants Peerless Insurance
Company ("Peerless"), sued herein as Liberty Mutual Insurance Company ("Liberty Mutual"),
and Valley Stream House of Carpets ("Valley Stream") cross-move pursuant to Federal Rule of
Civil Procedure 56 for a declaratory judgment as to ATTIC's obligations under an insurance
policy issued by ATTIC to Watkins.

## UNDISPUTED FACTS[1]

### I.    The Insurance Policies

      Plaintiff ATTIC is a risk retention group formed under the laws of the State of Montana.
(Defs.' Resp. 56.1 Statement ¶1, ECF No. 79.)  Plaintiff Watkins is a Montana trucking
corporation.  (*Id.* ¶ 2.)  Each plaintiffs' principal place of business is in the State of Montana.
(*Id.* ¶¶ 1-2.)  Defendant Valley Stream is a corporation formed under the laws of the State of

---

[1] The following facts are undisputed unless otherwise noted.

New York, with its principal place of business in the State of New York. (*Id.* ¶ 4.) The legal status of Defendant Liberty Mutual is disputed by the parties. (*Id.* ¶ 3.)

**A. The ATTIC Policy**

In October 2009, ATTIC issued a Truckers Liability and Cargo Liability insurance policy to Watkins, as the first Named Insured, and Watkins and Shepard Leasing, LLC, as the additional Named Insured for the period of October 1, 2009, through September 30, 2010 (the "ATTIC Policy"). (Defs.' Resp. 56.1 Statement ¶ 6; Pls.' Resp. Additional 56.1 Statement ¶ 34, ECF No. 80-1; Pls.' Ex. A., ECF No. 78-3.) Under the ATTIC Policy, Watkins was insured "for liability to others resulting from the ownership, use, and/or maintenance of any Covered Trucking Unit as defined." (Pls.' Resp. Additional 56.1 Statement ¶ 36; Pls.' Ex. A, at 18.) The ATTIC Policy contains, in relevant part, the following provisions.

**SECTION I – COVERED TRUCKING UNITS**

Unless otherwise noted on the Liability Policy Declaration, your Trucking Liability Coverage extends to any and all trucks, tractors, or other commercially used motor vehicle, and trailers you own, lease, borrow or otherwise use in connection with providing transportation services to others (these are referred to as your "Covered Trucking Units") including any truck, tractor or other commercially used motor vehicle, or trailer, owned by someone other than the Named Insured(s) but who leases or contracts with the Named Insured(s) to use such unit under the authority and in furtherance of the transportation services provided to others by the Named Insured(s). Your Covered Trucking Units also include:

- any trucks, tractors or other commercially used motor vehicle, and trailers that you acquire ownership or authority to use after the policy begins;
- Any truck, tractor or other commercially used motor vehicle or trailer that you do not own but are using with the permission of the owner as a temporary substitute for your Covered Trucking Unit while such unit is out of service for any reason.

. . .

# SECTION II – DEFINITIONS

. . .

**Bodily Injury –** any injury to a person other than the insured including sickness, disease or death.

**Employee** – includes all individuals employed, leased by or contracted to the Named Insured(s) who have authority granted by the Named Insured(s) to use operate or maintain any Covered Trucking Unit. . . .

**Insured** – includes (1) the Named Insured(s) for any Covered Trucking Unit; (2) the employees or agents of the Named Insured(s) while using or maintaining any Covered Trucking Unit under the authority of the Named Insured(s); and (3) anyone else while using with the Named Insured's permission any Covered Trucking Unit. Except as it relates to the Limits of Coverage set out in the Liability Policy Declaration the coverage provided by ATTIC, RRG applies separately to each insured who is either seeking coverage or against whom a claim or suit has been brought.

. . .

# SECTION III – TRUCKING LIABILITY COVERAGE

## Coverage

Unless otherwise excluded as set out below, ATTIC, RRG will pay all sums an insured <u>must pay to others</u> for damages resulting from bodily injury or property damage caused by an accident and resulting from the ownership, maintenance or use of a Covered Trucking Unit. ATTIC, RRG will also pay all sums an insured must pay as pollution liability resulting from the ownership, maintenance or use of a Covered Trucking Unit.

## Defense

ATTIC, RRG will defend any insured against a claim, suit or other demand seeking damages for bodily injury or property damage of others or for pollution liability. However, ATTIC, RRG has no duty to defend any insured against a suit seeking damages for bodily injury, property damage or pollution liability if the coverage contained within this policy does not apply or is otherwise excluded. ATTIC, RRG may investigate and settle any claim or suit as it considers appropriate. ATTIC, RRG's duty to defend or settle any claim or suit stops when the Limits of Coverage set out in the Liability Policy Declaration have been reached through payment of judgments or other settlements.

. . .

**Coverage Conformance to State Law**

ATTIC, RRG will provide the state statutorily required amounts and types of coverage required of the Named Insured(s), such as no-fault, personal injury protection, personal property insurance, uninsured or underinsured motorist coverage or any other coverage required by virtue of the Named Insured(s) licensing or use of any Covered Trucking Unit within the particular state. However, ATTIC, RRG will not pay any damage, loss or claim more than once for the same loss just because it is covered twice within this extension.

**Exclusions from Coverage**

The trucking liability insurance provided by ATTIC, RRG to the Named Insured(s) does not apply to any of the following:
. . .

> **Workers Compensation, Employer's Liability, and Co-Employees** – any bodily injury to any employee of an insured arising out of and in the course of the employee's employment by an insured or while performing any duties in furtherance of the business of an insured, including any bodily injury to any co-employee of any employee if the injury occurred in or arises out of and in the course of the co-employee's employment by an insured or while performing any duties in furtherance of the business of an insured.

> **Operations of any Equipment other than Covered Trucking Units** – . . . . If the cargo moving equipment used by an insured during the loading or unloading process is not owned, leased or under the control of the Named Insured(s) this coverage will apply <u>only in excess</u> of any other available coverage.

. . .

### SECTION V – OBLIGATIONS OF THE NAMED INSURED(S)

. . .

**In the Event of a Claim or Suit** – In the event of a claim or suit being made or served on any insured, the Named Insured(s) must:

> Immediately deliver to ATTIC, RRG a copy of such claim or suit including any demand, request, notice, order, summons or other legal paper received by any insured.

. . .

(Pls.' Ex. A, at 18-22, 24.)

The ATTIC Policy listed Jesse Elison as the Claims Counsel responsible for Claims Management.  (Pls.' Resp. Additional 56.1 Statement ¶ 35.)

**B.  The Peerless Policy**

Peerless issued an insurance policy to Valley Stream, Policy No. BOP9427507, with a policy period of June 1, 2010, through June 1, 2011, (the "Peerless Policy").  (Defs.' Resp. 56.1 Statement ¶ 7; Pls.' Resp. 56.1 Statement ¶ 5, ECF No. 82-3.)  The Peerless Policy includes an "Other Insurance" provision that provides, in relevant part, that:

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not.  But we will not pay more than the applicable Limit of Insurance.

2. Business Liability Coverage is excess over any other insurance that insures for direct physical loss or damage.

3. When this insurance is excess, we will have no duty under Business Liability Coverage to defend any claim or "suit" that any other insurer has a duty to defend.  If no other insurer defends, we will undertake to do so; but we will be entitled to the insured's rights against all those other insurers.

(*See* Pls.' Resp. 56.1 Statement ¶ 6; Cass Cossairt Decl. ¶ 9, ECF No. 81-1; Cossairt Decl. Ex. 4, at 25, ECF No. 81-6.)

**II.    The Underlying Action**

On June 21, 2010, Mohamed Turay, then-employed as a truck driver by Watkins, was injured while making a carpet delivery to Valley Stream.  (Defs.' Resp. 56.1 Statement ¶¶ 8-9; Pls.' Resp. 56.1 Statement ¶ 2.)  On January 10, 2012, Turay and his wife commenced a lawsuit in the Supreme Court of the State of New York, County of Nassau against Valley Stream seeking recovery for Turay's injuries (the "Underlying Action").  (Defs.' Resp. 56.1 Statement ¶¶ 10, 11; Pls.' Resp. 56.1 Statement ¶ 1.)  Peerless assigned counsel to defend Valley Stream in the Underlying Action.  (Defs.' Resp. 56. Statement ¶ 13.)

By letter dated October 17, 2012, Peerless tendered a claim to Watkins for the defense and indemnification of Valley Stream in the Underlying Action. (Defs.' Resp.56. Statement ¶ 14; Pls.' Resp. 56.1 Statement ¶ 7.) Peerless reasoned in that letter that because Turay's "injury occurred while loading/unloading a motor vehicle," as Turay's employer, "we turn to [ATTIC] for defense and indemnification of Valley Stream House of Carpets under [ATTIC's] Commercial Automobile Policy." (Defs.' Resp. 56. Statement ¶ 14; Pls.' Ex. C, ECF No. 78-5; Pls.' Resp. 56.1 Statement ¶ 7; Cossairt Dec. Ex. 5, ECF No. 81-7.) On November 9, 2012, Mr. Elison, corporation counsel at Watkins, responded to Peerless by letter stating that he was "not aware of any contractual obligation requiring Watkins and Shepard to pick up the defense," and denied Peerless' request to defend Valley Stream.[2] (Pls.' Resp. 56.1 Statement ¶.8; Coissart Decl. Ex. 6, ECF No. 81-8.) On August 27, 2014, Liberty Mutual renewed the tender request to Watkins. (Defs.' Resp. 56.1 Statement ¶ 17; Pls.' Ex. E, ECF No. 78-7.) Watkins then forwarded the request to ATTIC. (Defs.' Resp. 56.1 Statement ¶ 18.) On October 3, 2014, coverage counsel for ATTIC, James R. Callan, informed Peerless that ATTIC would assume the defense of Valley Stream, subject to a reservation of rights. (Defs.' Resp. 56.1 Statement ¶ 21; Pls.' Resp. 56.1 Statement ¶ 9; Coissart Decl. Ex. 7, at 2, ECF No. 81-9.) Additionally, ATTIC informed Peerless that ATTIC's liability, if any, would "be limited to only those defense costs incurred subsequent to [the] August 26, 2014, tender to ATTIC's insured." (Coissart Decl. Ex. 7, at 2.)

On February 3, 2015, the Underlying Action was settled for $375,000 (the "Settlement"), which amount was paid by Peerless. (Defs.' Resp. 56.1 Statement ¶ 23; Pls.' Resp. 56.1 Statement ¶ 10.) The Settlement was subject to the execution of a separate written

---

[2] Plaintiffs have admitted that Mr. Elison's name and contact information was listed in the ATTIC Policy as "Claims Counsel," responsible for "Claims Management." (Pls.' Resp. Additional 56.1 Statement ¶ 35.)

agreement among ATTIC, Peerless, and Valley Stream, wherein the parties agreed that the Settlement would not prejudice any party's claims concerning coverage in the Underlying Action.  (Pls.' Resp. 56.1 Statement ¶ 10; Coissart Decl. Ex. 9, ECF No. 81-11.)  A stipulation reflecting that agreement was entered into on March 9, 2015, between Plaintiffs ATTIC and Watkins, and Defendants Peerless and Valley Stream.  (Pls.' Resp. 56.1 Statement ¶ 11; Coissart Decl. Ex. 10, ECF No. 81-12.)  ATTIC reimbursed Peerless in the amount of $30,106.37 for defense costs incurred after ATTIC assumed Valley Stream's defense on October 3, 2014, subject to a reservation of rights.  (Defs.' Resp. 56.1 Statement ¶ 24; Pls.' Ex. Q, ECF No. 78-19.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  At summary judgment, the movants bear the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004).  Where the non-movants bear the burden of proof at trial, the movants' initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movants' claim.  *Celotex Corp.*, 477 U.S. at 325.

Once the movants meet that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial.  *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).  The

Court is to view all such facts in the light most favorable to the non-movants, drawing all

reasonable inferences in their favor. *Anderson*, 477 U.S. at 255. To survive summary judgment,

non-movants must present concrete evidence and rely on more than conclusory or speculative

claims. *Buffaloe v. Fein*, No. 12-cv-9469, 2013 WL 5815371, at *2 (S.D.N.Y. Oct. 24, 2013). If

the admissible evidence is insufficient to permit a rational juror to find in favor of the non-

movants, the court may grant summary judgment. *Amorgianos v. Nat'l R.R. Passenger Corp.*,

303 F.3d 256, 267 (2d Cir. 2002).

Where the parties seek a declaratory judgment, a court must consider "(1) whether the

judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2)

whether it would finalize the controversy and offer relief from uncertainty." *Gen. Star Indem.

Co. v. Driven Sports, Inc.*, 80 F. Supp. 3d 442, 449 (E.D.N.Y. 2015) (citing *Broadview Chem.

Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)). Additionally, since the

pronouncement of those factors, courts have also considered "(1) whether the proposed remedy

is being used merely for 'procedural fencing' or a 'race to res judicata'; (2) whether the use of a

declaratory judgment would increase friction between sovereign legal systems or improperly

encroach on the domain of a state or foreign court; and (3) whether there is a better or more

effective remedy." *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-60 (2d Cir. 2003).

## DISCUSSION

### I.    Limitation on Coverage

ATTIC seeks to disclaim coverage to Valley Stream on the grounds that the ATTIC

Policy prohibits coverage for any "bodily injury to any employee of an insured arising out of and

in the course of the employee's employment by an insured or while performing any duties in

furtherance of the business of an insured . . . " (the "Employee Exclusion Provision"). (Pls.'

Mem. Supp. Summ. J. ("Pls.' Mot.") 14, ECF No. 78-2; Pls.' Ex. A, at 21.) Defendants argue in

opposition that this exclusion does not reach coverage to Valley Stream because the exclusion is

qualified such that it applies only to coverage provided "to the Named Insured(s)." (Defs.' Mem.

Opp. Summ. J. ("Defs.' Opp.") 5-6, ECF No. 79-4; Defs.' Mem. Supp. Summ. J. ("Defs.' Mot.")

13, ECF No. 81-25; Pls.' Ex. A, at 21.) Thus, Defendants argue the plain language of the ATTIC

Policy limits these exclusions to Watkins. (Defs.' Opp. 6; Defs.' Mot. 13-14.)

Defendants' interpretation of the contract is unreasonable. Limiting the exclusions to

only the "Named Insured(s)" would result in a policy that provides greater coverage to the

additional insureds than to the "Named Insured(s)." *See Travelers Ins. Co v. Am. Cas. Co. of

Reading* ("*Reading*"), 441 P.2d 177, 180 (Mont. 1968) ("It is unreasonable that the [named

insured] would intend to pay a premium to provide more coverage to an omnibus insured than

the [named insured] provides itself."). Moreover, as ATTIC counters, the fact that the prefatory

language to the exclusions is limited to the "Named Insured(s)," creates only an ambiguity in the

ATTIC Policy because the enumerated exclusions each refer to "an insured." (Pls.' Mem. Opp.

Summ. J. ("Pls.' Opp.") 13-14, ECF No. 82; Pls.' Reply 7, ECF No. 80-2.) ATTIC argues

further that any ambiguity in the applicability of the exclusions should be resolved in their favor.

(*Id.*) The Court agrees.

Under Montana law,[3] an ambiguity exists when the contract taken as a whole is

reasonably subject to two different interpretations. *Swank Enters., Inc. v. All Purpose Servs.,

Ltd.*, 336 Mont. 197, 203-04 (Mont. 2007). When such an ambiguity arises in the context of an

insurance policy, the policy is typically interpreted in favor of the policy holder. *See Steadele v.

Colony Ins. Co.*, 361 Mont. 459, 463-64 (Mont. 2011) ("When an insurance policy is ambiguous,

---

[3] Plaintiffs argue (Pls.' Mot. 13), and Defendants concede (Defs.' Mot. 2), that Montana law applies to the
interpretation of the ATTIC Policy.

it is to be interpreted most strongly in favor of the insured and any doubts as to coverage are to be resolved in favor of extending coverage for the insured.").  In cases where the dispute involves a claim made by an omnibus insured, ambiguities in the policy will be resolved in favor of the named insured—here Watkins.  *Am. Trucking & Transp. Ins. Co. v. Travelers Prop. Cas. Co. of Am.*, No. CV 14-73, 2015 WL 4524833, at *3 (D. Mont. May 4, 2015) (noting that "when a dispute about coverage involves a claim for coverage by 'a stranger to the policy,'. . .  'any ambiguity should be resolved in favor of the named insured who must eventually bear the cost of excess coverage'" (quoting *Reading.*, 441 P.2d at 180)).

To buttress the argument that the Employee Exclusion Provision operates to bar coverage to Valley Stream, ATTIC directs the Court to the ATTIC Policy's definition of "bodily injury." (Pls.' Opp. 9-10.)  Specifically, ATTIC notes that, as defined under the ATTIC Policy, coverage for "bodily injury" is limited to "any injury to a person other than the insured . . . ."  (Pls.' Opp. 9; Pls.' Ex. A, at 19.)  And, as ATTIC's argument goes, "the insured" has the same meaning as "any insured," thereby excluding coverage to Valley Stream.

In opposition, Valley Stream urges the Court to interpret "the insured" to mean "the insured seeking coverage."  (Defs.' Reply 1, 3, ECF No. 83.)  Under this reading, the exclusion of coverage for "bodily injury" to an employee of "the insured" would only prevent Valley Stream from seeking coverage for the injuries of its own employee, not the employee of the "Named Insured(s)" or even "any insured."

Valley Stream's interpretation is contrary to Montana law.  Indeed, in a case addressing the same language contained in the ATTIC Policy, the District Court of Montana found that, in the context of determining the meaning of an exclusion prohibiting coverage for "bodily injury" of an employee of "the insured," "the insured" should be construed to mean "any insured."  *Am.*

*Trucking*, 2015 WL 4524833, at *6.  The court in *American Trucking* was guided by an earlier decision of the Supreme Court of Montana which refused to interpret the addition of the article "the" as meaning "the insured seeking coverage," because the contract itself did not supply such a definition.

> The policy defines 'insured'. The definition applies to the unqualified use of the word 'insured'. 'Unqualified use' refers to those portions of the policy which restrict themselves to the named insured. We are not moved by the contention that the word 'the' qualifies 'insured'. The plain and logical meaning of 'the insured' appears clear.

*Reading*, 441 P.2d at 203; *see also Am. Trucking*, 2015 WL 4524833, at *6 ("Furthermore, the Court's analysis here is primarily guided by *Reading*'s holding that the plain meaning of 'the insured,' in the context of a provision limiting coverage for employees of the insured, refers to any insured.").  It is clear that under Montana law, the term "the insured" must receive the same treatment as "any insured" in this context.

Construing the contract in ATTIC's and Watkins' favor, as I must, as per the Employee Exclusion Provision, coverage is not available for Valley Streams' claim which relates to injuries sustained by Turay, a Watkins employee, that arose out of and in the course of his employment by Watkins or while performing duties in furtherance of the business of Watkins.  (Pls.' Ex. A, at 21); *Am. Trucking*, 2015 WL 4524833, at *4.

## II.    Coverage Conformance Provision

Defendants maintain that, notwithstanding the Employee Exclusion Provision, the provision regarding coverage conformance of the ATTIC Policy (the "Coverage Conformance Provision") otherwise obligates ATTIC to provide coverage to Valley Stream.  (Defs.' Mot. 15-23.)[4]  On this point the Court agrees.  The Coverage Conformance Provision reads:

---

[4] While Defendants also argue for the application of New Jersey law because the truck used by Turay and the Valley Stream employee was principally garaged there, the ATTIC Policy provides that all covered trucking units will be

> ATTIC, RRG will provide the state statutorily required amounts and types of coverage required of the Named Insured(s), such as no-fault, personal injury protection, personal property insurance, uninsured or underinsured motorist coverage or any other coverage required by virtue of the Named Insured(s) licensing or use of any Covered Trucking Unit within the particular state. However, ATTIC, RRG will not pay any damage, loss or claim more than once for the same loss just because it is covered twice within this extension.

(Pls.' Ex. A, at 21.)  In this case, the accident at issue occurred in New York.  Hence, Defendants maintain that coverage must be provided as required under New York Law.  (Defs.' Mot. 20-23.) And, under New York Law, exclusions such as the Employee Exclusion Provision here, are not permissible under these circumstances.  (*Id.*)

It is instructive that other courts in New York have interpreted provisions like the Coverage Conformance Provision here as requiring an insured to provide coverage as proscribed under the Financial Security Act.  For example, the Appellate Division of the Second Department has held that a similar type of conformance provision required an insurer to provide coverage consistent with minimum requirements set forth in the Financial Security Act.  *See Gen. Acc. Ins. Co. v. Tran*, 246 A.D.2d 543 (2d Dep't. 1998).  In *General Account Insurance*, the policy language was similar to that provided in the ATTIC Policy, and provided that:  "[i]f an insured person becomes subject to the financial responsibility law or the compulsory insurance law or similar laws of another state because of the ownership, maintenance or use of your insured car in that state, we will interpret this policy to provide any broader coverage required by those laws."  *Id.* at 544 (finding non-resident was not uninsured because conformance provision provided minimum insurance required under New York law).  The Second Department affirmed this again in *Government Employees Insurance Co. v. Ally*, finding that a New Jersey resident was subject to the Financial Security Act, pursuant to an out-of-state conformance provision in

---

considered to be principally garaged in Montana.  (Pls.' Ex. A, at 6.)  As such, the Court does not address the applicability of New Jersey law.

his insurance policy. *Gov't Employees Ins. Co. v. Ally*, 106 A.D.3d 736, 737 (2013) ("As [non-resident insured] is subject to New York's financial responsibility law . . . his insurance policy provides bodily injury coverage by operation of the out-of-state insurance provision, and that coverage conforms to that required by New York's Financial Security Act."); *see also Prop. & Cas. Ins. Co. of Hartford v. Clarke*, 7 Misc. 3d 358, 361 (N.Y. Sup. Ct. Jan. 27, 2005) (noting that non-resident's insurance policy would be interpreted as providing coverage consistent with New York financial security requirements if policy "contain[ed] language that would make it fair and equitable to deem the insurer to be in compliance and conformity with New York law"). The Coverage Conformance Provision in this case warrants the same treatment.

ATTIC argues in opposition that the Employee Exclusion Provision is not prohibited because the ATTIC Policy is not an "owner's policy of liability insurance"—a specific type of policy under New York insurance law, the requirements of which have not been satisfied in this case. (Pls.' Opp. 16-20.) There is no dispute that the Plaintiffs are not an authorized New York insurer. (*Id*. at 17.) There is also no dispute that Plaintiffs failed to file forms consenting to service of process to the commissioner. (*Id*.) However, these facts do not obviate Plaintiffs' obligation to provide coverage consistent with that required for an owner's policy as contemplated by the contract. There can be no question that the parties at all times intended coverage pursuant to the Coverage Conformance Provision to conform to the requirements of an owner's policy of insurance. On this, the Court need look no further than the testimony of Plaintiffs' Executive Vice President. Indeed, when asked, he admitted that the ATTIC Policy was drafted to "provide the required coverages of owner's policies of insurance in New York." (Pls.' Resp. 56.1 Statement ¶ 34; Marshall T. Potashner Decl. ¶ 16, ECF No. 79-2; Pls.' Answer and Obj. to Decls. ¶ 16, ECF No. 80.) Were the Court to proceed as Plaintiffs urge, they would

be permitted to improperly avoid their contractual obligations because their own willful or negligent failure to abide by the procedural requirements of the New York statute.

Having found that the Coverage Conformance Provision requires ATTIC to provide coverage consistent with New York's "owner's policy of insurance," the Court agrees that the Employee Exclusion Provision cannot be applied. Under New York law, pursuant to 11 N.Y.C.R.R. § 60-1.2, an "owner's policy of liability insurance" is limited to, in relevant part:

> (d) Bodily injury to or sickness, disease or death of any employee of the insured arising out of and in the course of:
>
> > (1) domestic employment by the insured, if benefits therefor are in whole or in part either payable or required to be provided under any workers' compensation law; or
> > (2) other employment by the insured.

*See* N.Y. Comp. Codes R. & Regs. tit. 11, § 60-1.2.

New York's public policy objectives include ensuring that an "owner's liability policy . . . provide[s] the assurance that a party injured by the negligent operation of a motor vehicle has 'recourse to a financially responsible defendant.'" *Royal Indem. Co. v. Providence Washington Ins. Co.*, 707 N.E.2d 425 (1998) (citing *Morris v. Snappy Car Rental*, 84 N.Y.2d 21, 29 ( 1994)). Gaps in coverage under an auto insurance policy are prohibited by New York's Vehicle and Traffic Law. *See* N.Y. Vehic. & Traf. L. § 388(1) ("Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner."). In keeping with this policy consideration, exclusions that could result in a gap in coverage are void as contrary to public policy and unenforceable. *See Royal Indem. Co.*, 707 N.E.2d at 425 (finding non-trucking use exclusion was void where it could result in gap in

coverage); *Conn. Indem. Co. v. Hines*, 40 A.D.3d 903, 905 (2d Dep't 2007) (finding exclusion in trucking policy void "because its enforcement might result in a gap in coverage required by Vehicle & Traffic Law § 388." (citations omitted)). Such exclusions may be saved however, if the policy includes a provision that limits application of the exclusion to avoid coverage gaps.[5] *See Conn. Indem. Co.*, 40 A.D.3d at 905 ("Since the savings clause provides for coverage up to the minimum amounts required by the financial responsibility law . . . it is in compliance with Vehicle and Traffic Law . . . and does not violate public policy."); *see also Conn. Indem. Co. v. 21st Century Transport Co., Inc.*, 186 F. Supp. 2d 264, 274 (E.D.N.Y. 2002) ("[T]he only relevant question is whether the Non–Trucking Use Endorsement in the [policy] (or the policy as a whole) 'expressly provide[s] that it is only operative if the lessee has business use liability coverage in effect for the accident in question.'" (quoting *Royal Indem.*, 707 N.E.2d at 425)).

As drafted, the Employee Exclusion Provision denies coverage for "any bodily injury to any employee of an insured arising out of and in the course of the employee's employment by an insured or while performing any duties in furtherance of the business of an insured . . . ." (Pls.' Ex. A, at 21.) The parties do not point to, nor has the Court identified, any savings provision that purports to limit the applicability of this exclusion to avoid impermissible gaps in coverage. While the introduction to this exclusion makes reference to workers' compensation, the terms of the exclusion are not limited to an injured employee who is eligible for other forms of compensation. (*Id.*) On its face, the Employee Exclusion Provision creates a gap in coverage

---

[5] Such a clause could, for example, limit the exclusion to claims for injuries covered by workers' compensation, or other disability benefits. *See Pesta v. City of Johnstown*, No. 93211, 2007 WL 6955290, at *2 (N.Y. Sup. Ct. Jan. 9, 2007) (commercial auto policy included a "New York Changes" endorsement limiting employee bodily injury exclusion to situations where employee was "entitled to benefits under any of the following: workers' compensation, unemployment compensation or disability benefits law, or any similar law").

prohibited by New York's minimum requirements and is void and unenforceable.  *See Royal Indem. Co.*, 707 N.E.2d at 425.[6]

## III.    ATTIC's Duty to Defend

### A. Whether the Complaint in the Underlying Action Triggered a Duty to Defend

ATTIC seeks a determination that it had no duty to defend Valley Stream in the Underlying Action because the plaintiffs in that action "never alleged that their injuries or Valley Stream's alleged negligence arose out of the ownership, operation, use or maintenance of a motor vehicle."  (Pls.' Mot. 21.)  The complaint in the Underlying Action alleged, in relevant part, that Turay was "delivering carpet to Valley Stream House of Carpet," when a Valley Stream "representative improperly placed a dolly under a carpet roll, causing a hand truck to strike plaintiff and cause injury to plaintiff."  (Pls.' Ex. B, ¶ 5, ECF No. 78-4.)  Plaintiffs argue that this allegation was insufficient to alert them of a possible claim under the ATTIC Policy.

The duty to defend is broader than a duty to indemnify that is created by the same insurance agreement.  *Tidyman's Mgmt. Servs. Inc. v. Davis*, 376 Mont. 80, 93 (Mont. 2014) (quoting *Farmers Union Mut. Ins. Co. v. Staples*, 321 Mont. 99, 105 (Mont. 2004)).  "Unless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend."  *Staples*, 321 Mont. at 106 (citing *Insured Titles, Inc. v. McDonald*, 275 Mont. 111, 116 (Mont. 1996)).  Under Montana law, it "is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts that represent a risk covered by the terms of an insurance policy."  *United Nat'l Ins.*

---

[6] This result is not avoided by the fact that, as is the case here, the injured party has already been compensated.  As was true in the *Royal Indemnification* matter, the injured party had already been compensated and the dispute was limited to which party would cover the costs of defense and settlement.  *See Royal Indem. Co. v. Providence Wash. Ins. Co.*, 952 F. Supp. 125, 127 (N.D.N.Y. 1997) (noting plaintiff sought to recover fifty percent of amount it paid for settlement and attorneys' fees).

*Co. v. St. Paul Fire & Marine Ins. Co.*, 352 Mont. 105, 115 (Mont. 2009) (citing *Staples*, 321

Mont. at 105). An insurer may learn of these facts "through reference to pleadings, discovery, or

final issues declared ready for trial." *Grindheim v. Safeco Ins. Co. of Am.*, 908 F. Supp. 794, 798

(D. Mont. 1995). "[A]n insurer has no obligation to look beyond the complaint in determining

whether a claim is covered by a policy." *Newman v. Scottsdale Ins. Co.*, 370 Mont. 133, 149

(Mont. 2013). An insurer may not, however, ignore facts presented to it outside of the complaint

that "trigger[] the prospect of a duty to defend and/or indemnify based on the information

discovered." *Id.* (finding insurer's communication with defendant insurance company made it

"privy to facts" that alerted insurer of duty to defend and/or indemnify).

    While the Court agrees with ATTIC that the complaint in the Underlying Action did not

allege facts that would have triggered ATTIC's duty to defend, the Court's inquiry does not end

there. On October 17, 2012, Peerless tendered a claim for the defense and indemnification of

Valley Stream to Watkins. (*See* Defs.' Resp. 56. Statement ¶ 14; Pls.' Ex. C; Pls.' Resp. 56.1

Statement ¶ 7; Cossairt Dec. Ex. 5.) In that letter, Peerless stated that "[s]ince the injury

occurred while loading/unloading a motor vehicle, we turn to you for defense and

indemnification of Valley Stream House of Carpets under your Commercial Automobile Policy."

(*See* Defs.' Resp. 56. Statement ¶ 14; Pls.' Ex. C; Pls.' Resp. 56.1 Statement ¶ 7; Cossairt Dec.

Ex. 5.). The Court finds that this statement in the letter to Watkins triggered ATTIC's duty to

defend the Underlying Action.

### B.  Breach of the ATTIC Policy's Notice Provision

    ATTIC also argues it had no duty to defend because it received late notice of the

Underlying Action, which was in violation of the notice provision in the ATTIC Policy. (Pls.'

Mot. 18-19.) ATTIC alleges that its interests were "severely prejudiced" because it did not learn

of the claim until August 27, 2014, more than four years after the accident. (*Id.* at 18.) The

ATTIC Policy provides the following with respect to notice provisions:

> In the event of a claim or suit being made or served on any insured, the
> Named Insured(s) must:
>
> Immediately deliver to ATTIC, RRG a copy of such claim or suit including
> any demand, request, notice, order, summons or other legal paper received by
> any insured. . . .

(Pls.' Ex. A, at 24.)

Generally, coverage under a policy is dependent on whether notice is provided to the

insurer, as required by the policy. *See Steadele v. Colony Ins. Co.*, 361 Mont. 459, 465 (Mont.

2011). Under Montana law, a refusal to provide coverage because of a delay in notification

requires the insurance company to demonstrate prejudice. *Steadele*, 361 Mont. At 466-67 ("In

this case, because Colony did not receive notice of the claim, Colony was prejudiced in that it

was deprived of the ability to investigate, to locate witnesses, to appoint counsel, to engage in

discovery, to negotiate a settlement, and to develop a trial strategy."). ATTIC's claim to have

suffered prejudice from an alleged "breach" of the ATTIC Policy is without merit. In the ATTIC

Policy, Mr. Elison is listed as "Claims Counsel" for ATTIC. (Pls.' Ex. A, at 5.) It is more than

reasonable that Peerless chose to notify the employee listed in ATTIC's own policy as being

responsible for claims management. ATTIC's argument, raised at oral argument, that Mr. Elison

no longer worked at ATTIC, does not advance its position. It is unreasonable, however, to

expect an additional insured to investigate the accuracy of information provided by an insurer in

its policy.

Finally, the Court rejects arguments of any alleged "breach," because the ATTIC Policy

obligates the "Named Insured" to inform ATTIC of a claim. It contains no provision requiring

an additional insured to provide notice of a claim or suit. Any late notice to ATTIC was the

result of Watkins' failure to notify ATTIC of a claim; no fault can be attributed to Peerless for any delay.

ATTIC failed to assume defense of the action until October 2014, more than two years after receiving notice of a duty to defend. Because ATTIC unjustifiably refused to defend Valley Stream's claim, it is obligated to pay for the costs of defending the claim, as well as the stipulated settlement agreement. *See Lee v. USAA Cas. Ins. Co.*, 320 Mont. 174, 179 (Mont. 2004) (noting that an insurance company that unjustifiably refuses to defend a claim will be held liable for the cost of defending the claim as well as any resulting judgments); *Wood v. Preferred Contractors Ins. Co. Risk Retention Grp. LLC*, 144 F. Supp. 3d 1166, 1171 (D. Mont. 2015) (finding insurer liable to pay total amount of settlement agreement, in addition to defense costs, where it unjustifiably refused to defend action).

Defendants also seek the attorneys' fees associated with the defense of the current action. (Defs.' Mot. 24-25.) Montana typically follows the "American Rule," that each party is required to assume the costs of litigation absent a specific contractual or statutory provision. *Mountain W. Farm Bureau Mut. Ins. Co. v. Brewer,* 315 Mont. 231, 235, 245 (Mont. 2003) (stating American Rule and finding insurance exception to American Rule inapplicable to third-parties to an insurance contract). The Court finds no legal basis upon which to deviate from this long standing rule.

## IV.    Primary Versus Excess Coverage

ATTIC argues that should the Court find that it must provide coverage to Valley Stream, any coverage under the ATTIC Policy is in excess of any available coverage under the Peerless Policy. (Pls.' Opp. 22.) In making this argument, ATTIC turns to an additional limitation in the ATTIC Policy which provides that "[i]f the cargo moving equipment used by an insured during

the loading or unloading process is not owned, leased or under the control of the Named

Insured(s) this coverage will apply only in excess of any other available coverage." (Pls.' Ex. A,

at 21-22.) Moreover, ATTIC contends that Valley Stream has conceded that Watkins was not

the owner of the hand truck or dolly used by Turay. (Pls.' Opp. 22.)

Defendants contend, as a threshold matter, that this limitation does not apply because a

"hand truck or even a dolly" is not "cargo moving equipment." (Defs.'Reply 9.) Instead,

Defendants maintain that the "average consumer" would more likely consider items such as a

"fork lift, hydraulic lift, crane, or something similar" as "cargo moving equipment." (*Id.*)

Perhaps. Merriam-Webster, however, defines a "forklift" as a "self-propelled machine for

hoisting and transporting heavy objects by means of steel fingers inserted under the load." *See*

*Forklift*, Merriam-Webster, https://www.merriam-webster.com/dictionary/forklift. A "dolly" is

defined as "a platform on a roller or on wheels or casters for moving heavy objects." *See Dolly*,

Merriam-Webster, https://www.merriam-webster.com/dictionary/dolly. Under these definitions,

a dolly and a fork lift are both clearly instruments intended to move cargo, contrary to

Defendants' tortured argument. Nonetheless, Defendants are correct that Plaintiffs have failed to

offer any support that the cargo moving equipment was not a least "controlled" by Turay at the

time of the incident. Instead, Plaintiffs cite to Defendants' 56.1 Statement, which makes

reference to a pre-mediation statement submitted by Turay wherein he states that the equipment

used was not owned by Watkins; it speaks nothing of control. (Pls.' Resp. 56.1 Statement ¶ 4;

Defs.' Ex. 3, ECF No. 81-5.)

## CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment is hereby granted, except for Defendants' request for attorneys' fees in the instant action, and Plaintiffs' motion for summary judgment is denied in its entirety. The Clerk of Court is hereby directed to enter judgment accordingly and close this case.

Dated: Brooklyn, New York
      March 30, 2018

SO ORDERED:

_____/s/LDH_____
LaSHANN DeARCY HALL
United States District Judge